Case 13-2492 Basim Haddad et al. v. Randall S. Miller Associates PC Oral argument, 15 minutes per side Mr. Cuthie for the appellants Good morning, Your Honors. If I may, I would like to reserve four minutes. Your Honors, this is a case brought under the Fair Debt Collection Practices Act. And the real issue before the court is whether or not a debt collector can deprive a consumer of their due process rights under a foreclosure action. By taking a foreclosure by advertisement where there was already a foreclosure by judicial means pending. For purposes of this case, I think we can assume that this act doesn't really care about how the debt came about. And this act doesn't really care about how the debt is treated vis-a-vis the debtor. But this act does care and is very much concerned with the rules by which debt collectors play when they collect debts. Now, there are two allegations that I raised in my complaint, which were dismissed pursuant to 12b-6. We maintain that the district court judge did not apply the test properly. And that the defendant did not meet their burden in showing that there was no possible factual development under which we could prevail. The first count of my complaint dealt with 15 U.S.C. 1692-6A. That involves the deprivation of property under an unenforceable security interest. The second count dealt with 15 U.S.C. 1692-6C, which deals with the taking of a property where the property is exempt by law. I will deal with the claim under subsection A first. Your Honors, there are two critical facts under this statute from which all of the arguments flow. The first critical fact is that Serena Haddad, one of the appellants, did not sign the mortgage. The second critical fact is that the foreclosure did take place by advertisement while the judicial foreclosure was pending. In regard to the first fact, that the mortgage was not signed by the defendant's wife, Serena, there are two very clear legal principles which tell us that that mortgage was not enforceable. The first was, under Michigan statute 565.15, failure to sign a mortgage renders the mortgage void. Does it render it void or avoidable? Because isn't it, under Michigan law, can't it be ratified through subsequent action? Your Honor, the ratification issue is, in my opinion, a red herring for a couple of reasons. The first issue in regard to ratification is they're claiming an agency relationship later between the husband and the wife. And this gets back to the other reason why the mortgage would be illegal under Michigan law, and that is a husband cannot mortgage an entirety's property without his wife's permission. And that's what happened in this case. And getting back to your question about ratification, we can't presume an agency relationship under Michigan law. I cited numerous cases in my brief indicating that if you wish to argue that a husband, or his wife for that matter, is an agent of a spouse, you have to show it by affirmative evidence. None of that was presented to this Court. Well, you know, you talk about that you can presume it, but didn't Mrs. Haddad, in the course of the bankruptcy proceeding, sign documents and make representations that indicated her ratification or acquiescence or something in those mortgage documents? I think she made representations that indicated that she was, in fact, basically affirming that. She did make those representations. That is correct. And the best that we can infer from that... And if she, and I'll let you finish that, but if she made those representations, why is she not basically now stopped from denying the validity of those actions? First, in regard to making the representations, the only thing we can assume from that is a credibility issue. At best, we have two affidavits in this case which are contradictory. We have the statement in the bankruptcy. We have an affidavit saying, I never gave him permission to sign my name to the mortgage. Now, as I indicated in my brief, in bankruptcy cases, debtors are often forced to give up the ghost, so to speak. They want to keep their house. And that signing of the notice indicating that she would reaffirm the debt under the bankruptcy code is only that. It's only a notice. I will reaffirm the debt if given the chance. The second half of that transaction requires the bank to give the debtor a reaffirmation agreement under Section 551 of the bankruptcy code. Let me just ask you before you go farther with that, that's not the only thing in bankruptcy that bears on this. Because in filing a petition for bankruptcy, you have to list all of your assets and all of your liabilities. And why should they not be bound now by the way they listed, by what they put on their schedules? Again, in response to that issue, this is not the same situation as the judicial estoppel cases raised by the other side. This, I believe, falls into the DeMarco exception, which I indicated in my paperwork. In the DeMarco situation, we have a situation where the asset did not exist at the time of the filing of the bankruptcy. That is the exact same thing. Well, the asset you're talking about is this claim under the Fair Debt Collection Practices Act. But what I'm talking about is in order to file for bankruptcy, the HADADs had to list all of their assets and all of their debts. And the way they filled out their schedules indicated the property as an asset, the mortgage as a debt. That is correct. Did it not? It did. So why are they not now bound by that representation, which is critical to the bankruptcy proceeding, is it not? It is, and it was. And it remained property of the bankruptcy estate as an asset and as a debt. The issue becomes what happens to it after we come out. When we came out of bankruptcy, the case was still sitting there, the judicial foreclosure case. At that point, inside the bankruptcy, the creditor could have offered the reaffirmation agreement. They didn't. My clients would have signed it. Had it been presented to them, they wanted to keep their house. When they came outside of bankruptcy, they were expecting somebody to set aside the stay in the judicial foreclosure action and that they would deal with that at that time. They would either litigate it or they would settle it and pay it and resolve it. They wanted to keep their house. The problem with this case is the actions of this debt collector by going behind their back and filing the advertisement foreclosure. What prevented the Hadats from reopening the case that had been administratively closed? What prevented them from doing it? Nothing except sheer ignorance. And, you know, you argue that all of a sudden now they've come out and this thing is still pending. They want something. But it seems to me patently inconsistent that the Hadats in the bankruptcy context could say, we claim, we assert an interest in this property, and we list this mortgage as a debt, a joint debt. But now that we're out, Mrs. Hadat can come back and say, but, you know, that's invalidous to me because I never signed this. You can't have those two positions. I would agree, Your Honor, if this was a situation where the trustee was coming in and saying, I did not have notice of this. There was equity in this house. I could have sold this house. I could have paid debts from it. But that's not the situation here. The situation here is an after-acquired attempt to take the house away from them, in my opinion, illegally. I'm just talking about Ms. Hadat's assertion of an interest on the one hand and a denial of an interest or an obligation on the other. That's all I'm talking about, not the trustee, but her inconsistent positions with respect to this mortgage and the obligations that flowed therefrom. And you've acknowledged that the Hadats could have opened up the administratively closed matter, as could a creditor. I agree, Your Honor. The only thing that I can say, having done a lot of bankruptcy in the last 30 years, is debtors are not the brightest people in the world regarding what comes out in their paperwork. They're not highly sophisticated. All they knew was they wanted to keep the house. If you look at the history, we fight over the attempt to take it. We fight over the attempt to keep it in the bankruptcy. And then we come out of the bankruptcy, and they end up fighting to keep it back now, and now they're upset with the debt collector. Before this foreclosure advertisement occurred, how long had the Hadats been out of the bankruptcy? Wasn't it more than three years? I don't believe so, Your Honor. I believe the bankruptcy concluded in 2010. 2009. 2009 or 2010. I think it went in in March and came out in maybe October, November. The discharge was in July of 2009. Okay. Then that's correct. The foreclosure would have taken place in May of 2012, is my recollection then. Did they make any payments in the meantime? No, Your Honor, they did not. However, there has been an escrow set up. What the court is not aware of, because it wasn't put in the briefs, is there's a simultaneous action going on against the bank under state law. Under state law, when that action was filed in October of 2012, they were making escrow payments in order to have the right to stay in the house until the case is resolved since October of 2013. They are paying. Thank you, Counsel. Thank you, Your Honor. May it please the Court, Michael Cook on behalf of the defendant,  In preparing for an argument, I try to step back and get a view of what didn't come out clearly, what could be helpful to the Court. And there's one point that I want to touch on, but it appears that you have a pretty good understanding. So by all means, jump in and ask questions if you have them, and I'll address those. The point that I'm not sure I articulated as artfully or clearly as I should have It came out of the ratification argument that you discussed a little bit with opposing counsel. It involves what happens with the debt and the mortgage, specifically my discussion of the statement of intent. The statement of intent was talking about the debt, and it involves the mortgage. It did concede that there's a mortgage. So on any loan, you understand that there's the debt, there's the mortgage, and after bankruptcy, discourage goes through, you can't sue on the debt anymore. But the mortgage is still enforceable. So this relates to both of their claims. And when I say both of their claims, I understand that they have a claim involving the state court action being discontinued and a claim involving Mr. Haddad signing Mrs. Haddad's signature. In terms of the discontinued action theory, the discharge of the debt prevents them from suing on the debt is relevant because the statute, the foreclosure statute they're talking about, doesn't prevent a foreclosure action, solely a foreclosure action, and a foreclosure by advertisement. It prevents an action on the debt that is pending at the same time as a foreclosure action. So what do you argue was the effect of the administrative closure? Because Mr. Coote basically argues that since the litigation had been discontinued, that this falls, I think, within one of the exemptions of that statute and makes this improper. Right. He argues that the action wasn't discontinued.  It wasn't discontinued. That an administrative closure doesn't discontinue a pending action on the debt. Okay. We disagree with that. I understand that discontinue certainly would include dismissing a case. But as it happens, the Michigan Court of Appeals, in an unpublished opinion, gave a definition of discontinued that I think discontinued means dismissed. It says stopped, ceased. And I'm pretty sure that administrative closure stops and ceases a case. It wasn't going forward at that point. And it won't go forward. I think Michigan courts probably have. So an administrative closing order would be tantamount to basically a cessation or a suspension? A cessation and a suspension that goes on into perpetuity. The reality of it is. Even though it could be reversed by someone doing something affirmative to open it back up. And the order especially says that either party on motion can reopen that. And this gets to the point about the discharging the debt. There's no point to reopening the action, certainly not the claims suing on the debt after bankruptcy. You can't. There's an injunction. If you tried to restart those claims, you're going to get hauled into bankruptcy court and have to answer for doing that. So there could not be any action once they were discharged. So I guess my argument is two points. When they enter the administrative closure, that stops the case. And I would say under interpreting the word discontinue in the statute, that is discontinuing that action. And the second point is, after they were discharged from bankruptcy, there could never be an action on the debt. That action's done. You can't sue on the debt after they've been discharged from bankruptcy. The mortgage still exists, so they could still foreclose by advertisement. But, again, the statute only speaks to an action on the debt. What is your view of what actually happened at the end of the bankruptcy proceeding and immediately prior to the discharge when they expressed an intention to reaffirm, but according to your opponent, they didn't? Right. And I understand that two members of this panel were bankruptcy judges and probably have forgotten more. That was such a long time ago. Don't hold me to any of it. And I'll take them at the fact that when they express an intent to reaffirm the debt, the debtor and the creditor can then enter into an agreement and reaffirm the debt. And I'll agree that it doesn't appear that they actually entered into that agreement here. So the debt wasn't preserved. But, again, that's where I think I wasn't as clear as I could have been in discussing the ratification and the discontinuing aspect of what happened in the bankruptcy. My citation to the statement of intent is just another point in which Serena Haddad said, yes, there is a mortgage on this property, and the mortgage still existed after the bankruptcy. So whether it's ratifying through her original schedule, ratifying through the statement of intent, or judicial estoppel from not sharing with the bankruptcy court that she disputed that, I think she's bound by what happened in the bankruptcy and the mortgage is still enforceable. Was there a reaffirmation of this after the discharge or just they didn't do anything? Of the debt, my understanding is no. Frankly, it hasn't. I mean, we're dealing with the complaint as it's alleged, the facts. My understanding is that, just to answer the question, that they didn't reaffirm the debt or anything like that after the bankruptcy. Oh, and to answer... But they still kept the property and lived in it. Didn't say anything. That's pretty nice. To answer the question about the time between the discharge and the foreclosure sale was July 28, 2009 was the discharge of the bankruptcy, and May 1, 2012 is when the foreclosure happened. So that's a three-year period of not making payments. Also, in preparing for this, I guess just to give a basic lay of the land so that we understand that there are the two claims. For the first one, the discontinued state action claim is under subsection 6C, which involves exempt property. We have two arguments about that. The first is the argument about the need to discontinue, and the second is the argument about, even if you don't think the state court action was technically discontinued, this property was never exempt from foreclosure. It was always subject to a mortgage. Well, they never claimed through the bankruptcy that it was exempt. In fact, didn't they explicitly say that it was not? Right. Exactly. And that goes to the next claim. They claim that we violated subsection A and C of the FDCPA based on the forgery, and we have four arguments about that. One is judicial estoppel, and that's based on her failure to dispute this issue or raise the invalidity of the mortgage, which, if she has, I mean this isn't something without practical consequence or effect. If she had brought up the fact that the mortgage was disputed, the trustee could have done something about it, and there would have been more assets in the estate, and some of the debtors, including the municipality that had some tax liens, probably would have gotten paid. But she didn't, and there are reasons for that. But she can't, and there are all sorts of nice descriptions about this in the case. You can't blow hot and cold, you can't have your cake and eat it too, in terms of how parties interact with courts. When you make affirmative representation to the court that there's no dispute with this mortgage, you can't then go on and turn around and say, oh, great, that court bought it, so I'm going to get this other court to say, oh, yeah, get your cake and eat it too. So that's the judicial estoppel argument. I think it's pretty good. The one other aspect that I'm not certain came out as clearly, although based on the questioning I think you understand it, is we're not arguing that the FDCPA claim is part of the bankruptcy estate. I get it, that their claim, as it's structured, arose after the bankruptcy. We're arguing that based on what they did in the bankruptcy, they can't argue an essential fact that is necessary for them to prevail on their FDCPA claim. And then the other three arguments in terms of their forgery claim is ratification, which we've discussed, equitable subrogation, and equitable mortgage. And involving those two claims, if you have any questions, I'm happy to address them. In preparing for this, I understand that two of the members of this panel were on a case, I believe it was In re Souter, in which a lender or a mortgagee forged the mortgageor's signatures onto a mortgage after the fact. And this court said that, well, no, you don't get an equitable mortgage. They may have intended to give you one, but the bank forged the signatures. They never signed it, so we're not going to give you an equitable mortgage. I think that's distinguishable from this case, most significantly because Mr. Haddad not only signed his name, but he also signed his wife's name. Not to mention the witnesses. And the witnesses. I always forget the witnesses. And if you look at the court's discussion in that case, in its distinction of the Schramm case, it distinguished it based on the fact that that is what happened in the Schramm, where the husband signed the wife's signature. And in the Souter case, the court also pointed out that equity really wasn't necessary to apply because the lender still had an action on the debt in that case. That's not the case here. So I think if you're weighing the equities, and I think that's what Judge O'Meara ultimately expressed, that equity would weigh in favor of imposing an equitable mortgage. So I won't belabor the point anymore. If there are any other questions, I'll just ask that you affirm. Thank you. Thank you, counsel. Thank you, Your Honor. Just a couple of points. First, in regard to that order, I heard counsel indicate that you could still not proceed with the foreclosure, with the judicial foreclosure, and I don't believe that's correct. The judicial foreclosure is still a foreclosure of a mortgage. He's arguing that the mortgage survives. We're arguing that the mortgage was void. In any event, the entire crux of my complaint is that had they not gone around the pending foreclosure, judicial foreclosure, this could have been aired out in a court. It could have been fairly decided in whoever's case was right. But this debt collector's actions deprived my client of that right when there was an order making that case pending, when it could have been reopened, when they could have just as easily gone as my clients did. Instead, they went the wrong way. They went the sneaky way. They went around my client's back and denied him his right to reopen the case, to go back into court and argue to a court that that mortgage was void and that they shouldn't be held to it. There's a whole variety of issues there. Your Honors have picked up on them. I would also point out that, yes, my client did sign that mortgage. He did sign his wife's name. He did sign the witness's name. There's an affidavit and there's deposition testimony from my client on record from this court telling him the bank officer told him to do that. There's a whole variety of factual issues here which have conspired to disallow my clients their rights to that judicial action, and that's the whole crux of this case from my point of view. Second, I appreciate Counsel's concession on the issue about... Well, I'm going to skip that for now. That's it. Unless Your Honors have some other questions, I'm not going to go any further. Thank you. I think we do not. Thank you, Counsel. Thank you. The case will be submitted. The clerk may call the next case.